UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDMUND DISTEFANO, an individual,

    Plaintiff,

v.                                        Case No.:  2:18-cv-349-FtM-99MRM

HAMPTON GOLF, INC.,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

The parties filed a Joint Motion for Approval of Settlement on August 2, 2019. (Doc. 25). Plaintiff Edmund Distefano and Defendant Hampton Golf Inc. jointly request that the Court approve the terms of their proposed settlement of the Fair Labor Standards Act ("FLSA") claims asserted in this case. The proposed Settlement Agreement is attached as Exhibit A to the parties' motion. (*See id.* at ECF pp. 7-11). After a careful review of the parties' submissions and the court file, the Undersigned respectfully recommends that the presiding United States District Judge **APPROVE** the proposed settlement.

## LEGAL STANDARD

To approve the settlement of FLSA claims, the Court must determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute" of the claims raised pursuant to the FLSA. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1355 (11th Cir. 1982); 29 U.S.C. § 216. There are two ways for a claim under the FLSA to be settled or compromised. *Id*. at 1352-53. The first is under 29 U.S.C. § 216(c), providing for the Secretary of Labor to supervise the payments of unpaid wages owed to employees. *Id*. at 1353. The second is under 29 U.S.C. § 216(b) when an action is brought by employees against their

employer to recover back wages. *Id*. When the employees file suit, the proposed settlement must be presented to the district court for the district court's review and determination that the settlement is fair and reasonable. *Id*. at 1353-54.

The Eleventh Circuit has found settlements to be permissible when employees bring a lawsuit under the FLSA for back wages. *Id.* at 1354. The Eleventh Circuit held:

> [A lawsuit] provides some assurance of an adversarial context. The employees are likely to be represented by an attorney who can protect their rights under the statute. Thus, when the parties submit a settlement to the court for approval, the settlement is more likely to reflect a reasonable compromise of disputed issues than a mere waiver of statutory rights brought about by an employer's overreaching. If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute; we allow the district court to approve the settlement in order to promote the policy of encouraging settlement of litigation.

*Id.* at 1354.

## CLAIMS AND DEFENSES

In the Complaint, Plaintiff alleges that he worked for Defendant as a non-exempt "first assistant golf professional" from August 15, 2016 until April 13, 2018. (Doc. 1 at 3). Plaintiff alleges that during his employment with the Defendant, Plaintiff was required to perform work for which he was not compensated. (*Id.*). Specifically, Plaintiff alleges that rather than pay him lawful overtime, Defendant required him "to work off-the-clock, usually requiring him to perform work prior to punching in and requiring him to punch out at the end of his shift but remain working." (*Id.*). In the Complaint, Plaintiff estimated that Defendant denied him lawful compensation for approximately 1,700 overtime hours in violation of the FLSA. (*Id.* at 4). In his answers to the Court's interrogatories, Plaintiff estimated his total claim for unpaid wages to be $33,300.32. (Doc. 15 at ECF pp. 2, 6).

2

Defendants denied Plaintiff's allegations, denied liability, and asserted several affirmative defenses.  (*See* Doc. 9).

## ANALYSIS OF THE PROPOSED SETTLEMENT

*Bona Fide Dispute*

As a threshold matter, the Undersigned finds that a bona fide dispute exists between the parties.  As the parties' adequately explain in their joint motion:

> Defendant denied any liability and disputed that Plaintiff had worked in excess of 40 hours in a workweek during his employment or, assuming that the Plaintiff had worked in excess of 40 hours, Defendant maintained the number of hours of overtime hours were far less than what was claimed by the Plaintiff.  In this case, the Defendant maintained time records and the Defendant disputed the Plaintiff's estimations.  While the Plaintiff did often work significant overtime, it became undisputed that the Defendant paid the Plaintiff for all hours that appeared on his time card.  Th[e] issue in this case then became whether or not the Defendant's time records were accurate and, if they were not, whether the Defendant had actual or constructive knowledge of the Plaintiff's alleged overtime hours worked.  Finally, the parties disputed whether liquidated damages were warranted given that the Plaintiff was claiming hours worked off the clock, and was paid in full for overtime for hours worked at the Defendant's golf shop, assuming such hours appeared on his time card.  Despite extensive discovery, the parties agreed that genuine issues of disputed facts remained, namely whether the Plaintiff was required to work off the clock and if so, how much uncompensated work was performed by the Plaintiff.  After an extensive review of the record evidence, including third-party records of Plaintiff's other employment, the parties agreed that Plaintiff's overtime estimations in his FLSA interrogatories were unlikely to be substantiated at trial and that in actuality they would have been roughly 1/3 of the amount he initially claimed.  This case would have been expensive to litigate through trial, particularly given the disputed issues and amount of electronic discovery, all of which would have been unlikely to definitively resolve this case in favor of either party.  Moreover, had the case gone to trial, the Plaintiff would have had to use an IT expert, and the Defendant likely would have had to do the same.  Given the number of disputed issues, the amount of money in controversy, and the cost of litigation (which easily would have exceeded the amount the parties have

>agreed to settle this matter for), the parties believe that the settlement is a fair and reasonable compromise of a disputed claim.

(Doc. 25 at 3-4). For all of these reasons, it is clear that the parties have a bona fide dispute in this case.

Thus, the question becomes whether the terms of the proposed settlement are fair and reasonable. The Undersigned addresses the monetary terms, the neutral reference provision, and the attorney's fees separately below.

*Monetary Terms*

As indicated above, Plaintiff alleged in the Complaint that he worked 1,700 hours of unpaid overtime. (Doc. 1 at 4). In his answers to the Court's interrogatories, Plaintiff estimated his total unpaid wages to be $33,300.32. (Doc. 15 at ECF pp. 2, 6). Under the proposed Settlement Agreement, however, Plaintiff will receive a total settlement in the amount of $20,130, comprised of $10,065 in alleged unpaid overtime wages and $10,065 in liquidated damages. (Doc. 25 at 3, 7). The parties attempt to explain the disparity between the proposed settlement amount and Plaintiff's earlier damages estimates by stating that "[a]fter an extensive review of the record evidence, including third-party records of Plaintiff's other employment, the parties agreed that Plaintiff's overtime estimations in his FLSA interrogatories were unlikely to be substantiated at trial and that in actuality they would have been roughly 1/3 of the amount he initially claimed." (Doc. 25 at 3-4).

The Undersigned finds the parties' explanation of the discrepancy between Plaintiff's early estimates of his damages and the ultimate settlement amount to be paid to Plaintiff to be persuasive, fair, and reasonable. Thus, the Undersigned finds the proposed monetary terms of settlement are a fair and reasonable resolution of the bona fide dispute in this case.

4

*Neutral Reference*

The proposed Settlement Agreement contains a neutral reference provision that states:

> **NEUTRAL REFERENCE:** DEFENDANT agrees to provide the PLAINTIFF a neutral reference on company letterhead confirming dates or employment and positions held.  Should a prospective employer inquire as to additional information, including eligibility for rehire, DEFENDANT shall state that it is the policy of the company to confirm only positions held and dates of employment.

(Doc. 25 at ECF p. 9).  The parties do not address this non-monetary provision in their joint motion to approve the proposed settlement.  This provision plainly inures primarily – if not exclusively – to Plaintiff's benefit by protecting Plaintiff against the risk of any negative reference Defendant might otherwise provide to prospective employers.  Thus, although the neutral reference provision is facially a non-cash concession, it is not a non-cash concession by the Plaintiff in compromise of the FLSA claim.  There is no indication that the calculation of Plaintiff's recovery was discounted for the purpose of obtaining Defendant's agreement to provide a neutral reference.  Accordingly, the Undersigned finds that the neutral reference provision is fair and reasonable because it provides an additional contractual benefit to the Plaintiff without diminishing Plaintiff's recovery on the FLSA claim.

*Attorney's Fees*

The proposed settlement includes an agreement that Defendant pay Plaintiff's attorney's fees and costs in the amount of $12,870.  (Doc. 25 at 4, 7).  The parties state, "Plaintiff's attorney's fees and costs were negotiated separately from Plaintiff's settlement and without regard to the amount to be paid to the Plaintiff."  (*Id.* at 4).

As explained in *Bonetti v. Embarq Management Company*, 715 F. Supp. 2d 1222, 1228 (M.D. Fla. 2009), "the best way to insure that no conflict [of interest between an attorney's economic interests and those of his client] has tainted the settlement is for the parties to reach

agreement as to the plaintiff's recovery before the fees of the plaintiff's counsel are considered. If these matters are addressed independently and seriatim, there is no reason to assume that the lawyer's fee has influenced the reasonableness of the plaintiff's settlement." In *Bonetti*, the Court concluded:

> [I]f the parties submit a proposed FLSA settlement that, (1) constitutes a compromise of the plaintiff's claims; (2) makes full and adequate disclosure of the terms of settlement, including the factors and reasons considered in reaching same and justifying the compromise of the plaintiff's claims; and (3) represents that the plaintiff's attorneys' fee was agreed upon separately and without regard to the amount paid to the plaintiff, then, unless the settlement does not appear reasonable on its face or there is reason to believe that the plaintiff's recovery was adversely affected by the amount of fees paid to his attorney, the Court will approve the settlement without separately considering the reasonableness of the fee to be paid to plaintiff's counsel.

715 F. Supp. 2d at 1228.

In the instant case, a settlement was reached and the attorneys' fees were agreed upon without compromising the amount paid to Plaintiff. (*See* Doc. 25 at 4). The Undersigned finds, therefore, that the proposed settlement of Plaintiff's attorney's fees and costs is reasonable and fair.

Upon consideration of all the foregoing, the Undersigned finds and recommends that the proposed settlement in this case is fair and reasonable, and the proposed settlement should be approved by the Court.

## CONCLUSION

The Undersigned finds that the Joint Motion for Approval of Settlement (Doc. 25) and the Settlement Agreement (*id.* at ECF pp. 7-11) appear to be fair and reasonable. Accordingly, the Undersigned recommends that the settlement be approved.

Based upon the foregoing, the Undersigned respectfully **RECOMMENDS** that:

1. The Joint Motion for Approval of Settlement (Doc. 25) be **GRANTED**.

2. The Settlement Agreement (Doc. 25 at ECF pp. 7-11) be approved by the Court as a "fair and reasonable resolution of a bona fide dispute" of the parties' FLSA dispute.

3. If the presiding District Judge adopts this Report and Recommendation, then the Clerk of Court be directed to dismiss this action with prejudice, terminate all pending motions, and close the file.

Respectfully recommended in Chambers in Ft. Myers, Florida on August 5, 2019.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties